The second case on the argument calendar for today is Purkavoos v. Town of Avon, No. 18-2777. Good morning, Your Honors. My name is Pat Allen. I represent the defendant appellants, the Town of Avon, Avon Police Chief Mark Rinaldo, and Avon Police Detective Edward Espinoza in this matter. There's only one 1983 claim at issue on appeal. It is plaintiff's claim that Detective Espinoza violated his Fourth Amendment rights in preparing and executing two duly issued warrants for plaintiff's arrest in January 2015. There's only one specific issue before this Court on interlocutory appeal, whether the District Court erred in denying Detective Espinoza judgment on the pleadings on that claim based on qualified immunity. We respectfully submit that this 12C analysis, although a bit unique because of the extensive materials in the record, is governed by those materials in the record and the complaint allegations of fact which are not contradicted by those materials. And viewed through that lens, it is our ‑‑ we submit that three legal determinations must be made. Just to clarify, just to reiterate, so you will have an opportunity then if we were to disagree with you to make these arguments about qualified immunity at the summary judgment stage as well. Is that right? That would be correct, Your Honor. I would assume they would be almost identical in our view because all of the materials the Court needs to settle this issue of law is now before the Court as it was before the District Court. And I think it's evident from the District Court's opinion that although it paid lip service to the fact that materials incorporated by reference integral to the complaint allegations may be considered, it did not cite any of these materials in its decision. It merely stated in addressing probable cause and qualified immunity that it must accept the factual allegations as true at this stage when that is not necessarily the case. We have cited Cass v. City of New York, Garcia v. Does for the proposition that once materials are incorporated in the complaint and plaintiff does not object to the consideration of these materials, to the effect allegations in the complaint are contradicted by them, the materials control. And I'll just point to one instance in the District, Your Honor. It seemed to me that the materials that were before the District Court at this stage suggested that certain, that Detective Espinoza used his own language in a way that was inconsistent with some of the affidavits and omitted some of the language and reports that in seeking a warrant to search and arrest, I guess, that would have been potentially of interest to the officer issuing the warrant and that the District Court might have been entitled to rely on that at this stage, though, again, that might be explained or contravened at the summary judgment stage. Am I wrong in that? Well, to address that point, Your Honor, to me, the specific language issues raised, rubbed, fondled instead of rubbed, is mere semantics. But more importantly, these were written statements that were generated during these recorded interviews. The whole process is in the record. Detective Espinoza went through a painstaking process going through each sentence with these complaining patients to confirm their accuracy. He also advised them that by signing this, by signing them under oath, they were subjecting themselves to criminal prosecution if there were falsities in them. So, and lastly, whether the word fondled or rubbed or touched is used is immaterial to probable cause because regardless of the description, it's a sexual contact that must be supported by a bona fide medical purpose. There's no dispute that Dr. Porcaboose touched these female patients in intimate parts of their bodies. And I should... But it struck me that it was possible that the record suggested that some of the touching that the detective highlighted was legitimately for purposes, for medical purposes, and there was no indication that it was for purposes of sexual gratification as required by the statute, and that that was still kind of open and uncertain. Well, that's a good point, Your Honor. I would submit that the most serious allegations came from Patient 1, who accused Plaintiff of manipulating and penetrating with his finger her vaginal area. When Dr. Porcaboose was given every chance to explain this, to address this allegation, it would be one thing if he said, yes, that's true, but I had this medical purpose in mind. Instead, he said, I would not put a finger in her vagina. I would not check her private area. You would never look for a rash in her vagina. Why would I examine the vagina? He denied it. He denied it flat out. So at that point, it's implicit that there's no... But if he's lying, which Detective Espinoza was entitled to presume based on all the information in front of him and the collective complaints of all three patients, and I just wanted to point out because I think it's important, all three patients accused him uniformly of without warning or consent removing their undergarments to expose their intimate parts. A plaintiff went out of his way to say, I would never pull anybody's underwear down. I would never unclip anyone's bra. I would always have gloves on if I examined a vaginal area. These statements are flat denials, completely at odds with these three patients who had much less incentive to be dishonest, who were willing to put their statements under oath. An objectively reasonable detective in Espinoza's position was allowed to conclude that he had probable cause, and that's all the standard here. He didn't have to be sure that he would get a prosecution on these charges. It obviously could raise some complicated medical issues. But as far as these vaginal penetration and manipulation, bona fide medical purpose is not at issue. What was the circumstances of the dismissal of the charges against Dr. Park-Caboose? Is that shown in the record? According to the complaint, the charges were dismissed two and a half years after they were brought based on the State obtaining a medical expert. And at that point, I mean, it's in the complaint. It has nothing to do with what Detective Espinoza did or any assertions by Detective Espinoza. It came down to medical experts that the reviewing prosecuting attorney and the reviewing judge did not think was required, at least at the probable cause stage. And also I would suggest that it's for purposes of the issues before the court, the success or failure of the prosecution of these charges is really not relevant. I understand, but I was just curious about that. Fair enough, Your Honor. As I've noted, this is essentially a he said, she said. If Dr. Espinoza was lying, it's implicit that he had no legitimate medical basis to do these things. He, in fact, insisted that he had no basis to engage in these contacts as supportive of his denials. So all this arguments about a rectovaginal exam are moot because Dr. Park-Caboose denied engaging in any conduct like that. I'll sit down, Your Honor. Thank you very much. You have two minutes for rebuttal. Sir? Good morning. Morgan Rickert for Dr. Park-Caboose. And I'll start, Judge Carney, right where you started, which was the district court found that Detective Espinoza made recklessly false statements, I'm quoting, recklessly false statements in the warrant application and improperly included his subjective beliefs. And I want to give you an example and just walk the court through the record of how he found that. And to orient the court, Dr. Park-Caboose was a family practitioner, had a thriving 6,000 patient practice. In 12 years, not a single complaint against him. And these cases involve allegations of sexual assault by patients in the course of medical exams. And in Connecticut, like almost everywhere else, when the doctor is accused of sexual assault in the course of an exam, there's an additional element, which is the lack of bona fide medical purpose, lack of a real purpose, lack of a medical basis for the exam. And that's really the element in the charge. And every reasonable officer knows that because it's right there in the statute. And so as set forth in our papers, all these patients had extensive medical histories and that focusing on patient one. So I'm going to walk the court through patient one. So she had a history of severe constipation, rash, bloody stool, a lump in her breast, anemia, had been referred for a colonoscopy, Dr. Park-Caboose, that she never attended. She had significant nerve impingement in her spine, a spinal fusion surgery, pain down, emanating down her legs. And she had significant ongoing issues with her breasts due to history of breast cancer in the family, history of ongoing issues with the GI tract, and a history of ongoing issues with her lower back pain and nerve impingement. Okay. So in the interview with patient one, and the interviews of the patients by the detective were recorded, were audio recorded, so we can hear them, and the transcript of them is in the record. And so what she describes as, and I quote at seal appendix 135, he started doing my breasts, just grabbing them and squeezing them. And when he was doing that, I said, I do have a lump there. You know, I was diagnosed with fibrocystic disease. And he said, yeah, I could feel one, I would have it checked out, and said get dressed and order lab work. So squeezing the breasts in connection with the lump. And then she described the exam of her sciatic nerve on her buttocks. He was looking at my back and then pushing down here, pushing down here, and said my sciatic on my lower back kept pushing around and asking me if I feel pain anywhere. So pushing is that word. That's recorded. And then in connection with the abdominal pain, the bloody stool, severe constipation, she described what would be called the rectovaginal exam. And she said he inserted two fingers, one in the vagina, one in the rectum, and was moving this one. That's what she said, moving. So we have squeezing in connection with the tumor. What did Dr. Porcovus say, though? I mean, I'm concerned by the argument made by your adversary that if we end up with a he said, she said situation, why isn't it at least why doesn't the detective have at least arguable probable cause to pursue the allegations? What he said over 20 times was he doesn't remember in the exam. It's months later, thousands of patients later. He said over 20 times in the record, I don't remember. But he did say. He said he would never he said he would never under any circumstances put a finger in the vagina because he simply doesn't do that kind of examination. Right. And again, this is where we get into the issue of a lack of medical expertise, because what the detective was accusing him of is a vaginal exam, which to a doctor is a specific thing. Vaginal exam is not a rectal exam. And conflating two issues where the one of the allegations was a finger in the vagina. Right. And in the rectum, which is a rectal vaginal exam. In other words, he said he would never put a finger in the vagina again. He said he wouldn't. He didn't remember. He said he would never do that. He said that's just not part of his practice. He would never do it and didn't do it right in the context of a course of interrogation where they pulled him out of his office, threatened to shut down his practice and lied to him and said the patient had passed polygraph four times. The patient has passed a polygraph when they never gave her a polygraph. And so at the very course of interrogation, he's being accused at one point, he says, why would you accuse me of this at this time of day? I'm a good doctor. I wouldn't do anything like this. So he's denying. And he said repeatedly, Your Honor, that he would never do anything appropriate. Never do anything appropriate. And they're accusing him of a vaginal exam. The issue is just whether the police officer had arguable probable cause. Right. But it isn't a he said, she said, Your Honor. It isn't. Because there's an additional. If someone walks up on the street and grabs a stranger's breast, the victim says he grabbed my breast. The defendant said I didn't. The detective is allowed to believe the complainant and say, you know, it's a he said, she said. But when there's an additional element where the lack of a bona fide medical purpose, that adds an element to it. And the question is, in other words, they're creating a false dichotomy that if the doctor denies doing it, that establishes the probable cause. That's not the case. If the doctor denies doing it, then it's not a question of whether he did it with a proper medical purpose. If he said I just never do that, then it's a he said, she said over whether it was done without a proper medical purpose. Because the doctor acknowledged not having a proper medical purpose. He said that's not part of my practice. I don't do that. And he said repeatedly that I do rectal exams. Rectal exams are standard of care. And a rectovaginal exam is a rectal exam, Your Honor. A vaginal exam is something completely different. And so but to get back to the false representation in the warrant, and so moving. So we had pushing, squeezing, and moving. And the detective took notes and comes back and reads his handwritten statement of what hers. She asks him to read it. She said, no, I need you to read it because they don't trust cops at court. I need you to read it. And she starts to read it and says, I can't read it. I need you to read it to me. So he reads the statement to her. So she actually never read her statement. And then the word, now the words in her statement are, Dr. Porgovos proceeded to examine me by touching and fondling my buttocks and breasts. And fondling is a pejorative term. It means to caress erotically. When she said squeezing, when she said pushing, he inserts the word fondling. And then with respect to the rectovaginal exam, he says, I could feel him move his fingers in a strange way. It gets more intense than that, but he says strange. Now he reads the statement and asks, is that accurate? Here's what she says. I'm just, like, really confused. I know what's on there, referring to the tape, is accurate. And that's at sealed appendix 179. And she states again, is the tape recording involved? Is it going with it? Meaning, is the tape recording going with her statement? That's at sealed appendix 192. Okay, because I get really, like, I get really, like, confused when things are written down and then kept changing and then read to me and then puts another story in, you know, when I have to be correct. So you're saying that the characterization that implies sexual gratification was an overlay created by Detective Espinoza and that wasn't, didn't originate with the complainant. Is that right? Right. And to rely on the fact that she signed the statement, that it's her affidavit. She did complain. Understand, she complained and said she felt uncomfortable. But she didn't say fondle. She didn't say strange sexual. So when it ends up in the Warren affidavit, what he writes is, victim one could feel his fingers moving in a strange sexual manner. Now, that's even different from the statement that he wrote. So when they say and rely on the fact that all the evidence is in the record and the Warren affidavit is consistent with her statement and she signed it, that's the end of it, that's just not accurate because she didn't read it and she said she was confused and wanted to rely on the recording and the detective tells her it's exactly the same. There's no difference with the recording, which is a lie. It's different. And to get to the Court's other question about sexual gratification, I may have looked at every case against the doctor in all the land. And in all those cases, there is that element of sexual gratification, whether it be contact with the detectives, with the doctor's private parts, or whether it's some kind of moaning or some kind of propositioning by the doctor or a quid pro quo. There's always some element of that. And the detective asks patient one. I'm just walking down patient one. So he says, so, detective, so what you're describing to me during these two appointments, and, you know, I'm not an expert in medical practice, but it sounds a little strange to me, and I'm just wondering if you can recall like a conversation or something else that seemed kind of strange to you at all. I don't know if he ever wanted to go on a date with you or anything like that. Patient, no, no. Detective, did he ever? Patient, absolutely no, never. Patient, no, it was very professional. He did all my testing and everything over the year and a half. I don't know how long I've been with him, a year and a half. So in response to the sexual gratification question, which really goes to the element of bona fide medical purpose, she denies it. She says explicitly he was very professional. Am I right in recalling that she consulted him again after that one interview? There were some of the complainants, yes, consulted with him. Some of the others. Yes. All right. Thank you very much for your arguments. Mr. Allen, you have two minutes of rebuttal. Thank you, Judge Cardney. Just a few quick points. The district court did not find recklessly false statements in the affidavit. It simply accepted those allegations as true. And, for instance, it accepted plaintiff's allegation that Detective Espinosa did not disclose in his warrant affidavit that this patient had been arrested in 2005 for forgery. In fact, he not only disclosed that, but also disclosed her subsequent conviction for forgery. All this discussion about contact with patient one's breasts and her description of it is not relevant. He was charged for the vaginal contact and the vaginal penetration. She came there to make a sexual assault complaint. He denied doing what she said he did. There's no other reasonable inference on those facts alone than there was no medical justification for those contacts. Dr. Porkvoo said this himself over and over during the interview. But do you deny that there's, there are implications that are concerning about his recharacterization of her statements with more sexually oriented words? Again, I think a close listening to or reading of the transcripts of these interviews, the plaintiff is making mountains out of molehills. There is, the essence of these complaints is fairly described in these written statements. And these patients didn't have to sign these. They adopted these words themselves. They weren't forced to do anything. There's no trickery here. They came to Espinoza. As a quick point about the ---- One came to Mr. Espinoza, right? That's true. And then Espinoza went to great lengths because he was concerned about the reliability of these accusations to see what else he could find. He interviewed objective people who said her story's been the same the whole time. And then he found complaints of related conduct, interviewed those patients. They accused him of doing the same thing that he said he never did. Clearly established law, that standard can't be met here. I'll cite to the brief, but there's only one case that even remotely is on point, and it's State v. Gupta. It's a Connecticut State Supreme Court case. And it indicates that it's on the doctor. Once there's no dispute that there's sexual contact or penetration, it's on the doctor to provide as a defense some medical justification. Thank you very much. Thank you for your arguments. We'll take the matter under advisory.